MÓNICA RAMÍREZ ALMADANI (SBN 234893)
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 1500
Los Angeles, California 90067
Tel: (424) 332-4800
Fax: (424) 332-4749
mralmadani@cov.com

NORA A. PRECIADO (SBN 239235)
KAREN C. TUMLIN (SBN 234691)
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Boulevard, Suite 1600
Los Angeles, CA 90010
Tel: (213) 639-3900
Fax: (213) 639-3911
preciado@nilc.org; tumlin@nilc.org

*(Additional Co-Counsel for Plaintiff on Subsequent Page)*

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Juan Manuel MONTES BOJORQUEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES CUSTOMS AND BORDER PROTECTION and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>    Defendants. | Civil Case No.: '17CV780  GPC NLS<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552** |

*Additional Co-Counsel for Plaintiff*

STACY TOLCHIN (SBN 217431)
LAW OFFICES OF STACY TOLCHIN
634 S. Spring St., Suite 500A
Los Angeles, CA 90014
Tel: (213) 622-7450
Fax: (213) 622-7233
Stacy@tolchinimmigration.com

BELINDA ESCOBOSA HELZER (SBN 214178)
LAW OFFICES OF BELINDA ESCOBOSA HELZER
712 N. Harbor Blvd.
Fullerton, CA 92831
Tel: (714) 879-5770
bescobosahelzer@gmail.com

DEVON L. MOBLEY-RITTER (SBN 309439)
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Tel: (650) 632-4739
Fax: (650) 632-4839
dmobleyritter@cov.com

# INTRODUCTION

1. Plaintiff Juan Manuel Montes Bojorquez ("Mr. Montes") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief seeking the disclosure and release of agency records improperly withheld by Defendants United States Customs and Border Protection ("CBP") and United States Citizenship and Immigration Services ("USCIS").

2. Mr. Montes is a 23-year-old young man who has twice been granted deferred action and employment authorization pursuant to the Deferred Action for Childhood Arrivals ("DACA") program, which the U.S. Department of Homeland Security ("DHS") established in 2012. Under the DACA program, individuals like Mr. Montes are authorized to live and work in the United States for a two-year period, subject to renewal for a period of two years.

3. CBP agents arrested, detained, and physically removed Mr. Montes from the United States in the middle of the night on or about February 18, 2017. Mr. Montes was approached by a CBP agent while he was walking down the street in Calexico, California on his way to take a taxi home after seeing a friend. At that time, Mr. Montes had DACA status and employment authorization, which did not expire until 2018. The physical departure from the United States of a DACA recipient without governmental permission of a grant of "advance parole" before departure automatically terminates DACA status.

4. To this date, Mr. Montes, who suffers from a cognitive disability and is living in limbo in Mexico, does not know the legal basis for his removal. CBP did not provide Mr. Montes with any documentation or record of his removal. Through counsel, Mr. Montes has repeatedly attempted to obtain documentation from Defendants, but there has been no response to his inquiries.

# JURISDICTION AND VENUE

5. This Court has jurisdiction under the FOIA pursuant to 5 U.S.C. § 552(a)(4)(B), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 2201-2 (authority to issue declaratory judgment when jurisdiction already exists).

6. Venue properly lies within the Southern District of California under 28 U.S.C. § 1391, because this is a civil action in which Defendants are agencies of the United States, and because a substantial part of the events or omissions giving rise to this action occurred in the District.

## PARTIES

7. Plaintiff Juan Manuel Montes Bojorquez was physically removed from the United States on or about February 18, 2017. He had valid DACA status when he was removed. He was not provided the opportunity to see an immigration judge, seek the assistance of counsel, or otherwise present his DACA paperwork or work authorization before he was removed from the United States. Mr. Montes is currently in Mexico.

8. Defendant United States Customs and Border Protection ("CBP") is an agency of the Department of Homeland Security ("DHS"), within the Executive Branch of the government of the United States, and an agency within the meaning of 5 U.S.C. § 552(f)(1). CBP is the agency that issues orders of "expedited removal" at the ports of entry, as well as documents that allow noncitizens to withdraw their applications for admission to the United States and voluntarily return to their home country. 8 U.S.C. § 1225(b) § 1225(a)(4); 8 C.F.R. § 235.4. CBP has in its possession, custody, and control records to which Mr. Montes seeks access.

9. Defendant United States Citizenship and Immigration Services ("USCIS") is also an agency of DHS, within the Executive Branch of the government of the United States, and an agency within the meaning of 5 U.S.C. § 552(f)(1). USCIS is the agency that holds the records for a noncitizen's "Alien file," including documents related to "expedited removal" at the ports of entry, and documents that allow noncitizens to withdraw their applications for admission to the United States. USCIS has in its possession, custody, and control records to which Mr. Montes seeks access.

## FACTS

10. Plaintiff Juan Manuel Montes Bojorquez ("Mr. Montes") came to the United States when he was only nine years old. He is now 23 years old. Mr. Montes suffered a

traumatic brain injury when he was a young child.  He was enrolled in special education classes throughout his education in the United States—from elementary school through high school.  Mr. Montes overcame these challenges and graduated from high school in 2013.  The next year, he enrolled in community college in the United States and began pursuing a welding degree.

11. Prior to his removal, Mr. Montes had been employed as a farmworker for approximately two years.  He worked in various parts of California and Arizona, rising early each morning to pick crops in the fields.  Throughout this period, Mr. Montes planned to return to community college to complete a degree.

12. In 2013, Mr. Montes applied for the Deferred Action for Childhood Arrivals ("DACA") program, which DHS established in 2012.  Memorandum of Janet Napolitano, Sec'y of Homeland Security, to Alejandro Mayorkas, Director, USCIS, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children*, June 15, 2012 ("2012 DACA Memorandum").  Under the DACA program, individuals who (1) were under the age of 31 as of June 15, 2012, (2) came to the United States before their 16th birthday, (3) have continuously resided in the United States since June 15, 2007, up until the present time, (4) were physically present in the United States on June 15, 2012, (5) had no lawful status on June 15, 2012, (6) are currently in school, have graduated or obtained a certificate of completion from high school, and (7) have not been convicted of a felony, significant misdemeanor, or three or more other misdemeanors, and do not otherwise pose a threat to national security or public safety are eligible for deferred action.  *Id.*

13. Those who meet the DACA requirements "may request [DACA] for a period of two years, subject to renewal for a period of two years, and may be eligible for employment."  *Frequently Asked Questions*, USCIS, https://www.uscis.gov/humanitarian/consideration-deferred-action-childhood-arrivals-process/frequently-asked-questions.  As USCIS's website affirms, "DACA is intended, in part, to allow CBP and ICE to focus on priority cases.  Under the direction of the Secretary of Homeland Security,

if an individual meets the guidelines for DACA, CBP or ICE should exercise their discretion on a case-by-case basis to prevent qualifying individuals from being apprehended, placed into removal proceedings, or removed." *Id.*

14. DACA status terminates if a DACA recipient departs the United States without advance parole permission prior to departure. *Id.*

15. USCIS granted Mr. Montes deferred action under DACA in 2014, and he successfully renewed his DACA status in 2016 for another two years, expiring in 2018.

16. Mr. Montes also obtained an Employment Authorization Document ("EAD") issued under the DACA program. The EAD issued to Mr. Montes is the type of EAD that is granted only to DACA recipients. The "C33" category corresponds to DACA.

17. On or about February 17, 2017, Mr. Montes was walking to a taxi stand in Calexico, California after leaving a friend's house when a law enforcement official—seemingly a CBP officer—on a bicycle approached him and began to question him. It was approximately 10:00 p.m. when he was stopped. The officer asked Mr. Montes in an aggressive manner for identification, but Mr. Montes had accidentally left his wallet, which contained his California identification card and EAD, in a friend's car. The officer then called another agent or officer to the scene. Mr. Montes was scared and confused that he had been stopped and felt threatened by the officer.

18. A second officer arrived at the scene and placed him in a vehicle. That officer then drove Mr. Montes to a station at the port of entry in or near Calexico. There, he was detained, questioned, and asked to sign certain documents, which may have been in English. Although Mr. Montes speaks and reads English, Spanish is his preferred language.

19. Mr. Montes was not provided with the opportunity to see an immigration judge, seek the assistance of counsel, or review the contents of the documents that he was forced to sign. He was also not provided a copy of any of those documents and is unaware of the legal basis for his physical removal.

20. Upon information and belief, CBP was able to determine if Mr. Montes had DACA status before he was physically removed. Mr. Montes has had minor traffic offenses and a single misdemeanor offense, none of which would have disqualified Mr. Montes from DACA.

21. At approximately 1:00 a.m. or later, CBP officers walked Mr. Montes to the U.S.-Mexico border (near Mexicali, Baja California) and physically removed him from the United States despite his DACA status.

22. After being removed to Mexicali, Mr. Montes contacted the friend in whose car he had left his wallet. This friend drove across the border and brought Mr. Montes his wallet. Another family friend delivered some clothes, and Mr. Montes spent the day at a friend's house in Mexicali.

23. One or two nights after he was physically removed, Mr. Montes left his friend's house at around 10:00 p.m. because he had planned to stay with family who also lived in Mexicali. On his way there, Mr. Montes was approached by two men. One man wrapped his arm around Mr. Montes' neck and held a blade to his back, while the other man grabbed Mr. Montes' suitcase, which contained his clothes. Mr. Montes tried to run away, but he fell. The two men caught up to Mr. Montes and began kicking his back and legs while he was on the ground.

24. After this attack, Mr. Montes was shaken and feared for his life. He did not know what to do, but he knew he needed to be safe. Having left his wallet and phone at his friend's house in Mexicali, he returned for those items, which had not been in his bag and thus had not been stolen. On or about February 19, 2017, Mr. Montes attempted to return to the United States. He hid for about a half an hour after crossing into the United States, but when he saw CBP officers he feared for his safety and turned himself in.

25. After patting Mr. Montes down and confiscating his phone and wallet, the CBP officers took him to a nearby facility, where he was detained for many hours. During this time, Mr. Montes was questioned in Spanish about his identity.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552

26. CBP officers asked Mr. Montes to sign several documents without explaining the documents' contents and without providing him the opportunity to review the documents. Mr. Montes was not provided a copy of any of the documents that he signed.

27. On or about February 20, 2017, many hours after officers began questioning him, Mr. Montes was again physically removed to Mexico without any documentation or records of his removal.

28. Mr. Montes is currently staying with family in Mexico.

29. On March 15, 2017, Mr. Montes' counsel filed a FOIA request with Defendant CBP electronically, requesting "all records regarding any interactions, arrests, detentions or apprehensions by CBP, including any interactions on or about February 17, 2017 to February 21, 2017." Defendant CBP issued a confirmation receipt electronically, assigning the receipt number CBP-2017-039894.

30. Mr. Montes filed this request to obtain any records ordering his physical removal. He requires this information in order to learn the reason for his physical removal on or about February 18, 2017 and on or about February 19, 2017, which was never communicated to him when he was in the custody of CBP.

31. Also on March 15, 2017, Mr. Montes' counsel sent a letter to the Calexico Port of Entry Director, David Salazar, via fax, asking for information related to Mr. Montes' removal.

32. On March 17, 2017, counsel for Mr. Montes contacted Director Salazar, via e-mail, in order to request an update on CBP's progress locating the requested documents.

33. Receiving no response, counsel for Mr. Montes again e-mailed Director Salazar on March 20, 2017. That day, Mr. Ryan Koseor, the Acting Assistant Port Director, responded to counsel's e-mail, stating, "I am having trouble finding Mr. Montes's case," and asking for verification of Mr. Montes' name and date of birth. Counsel for Mr. Montes replied to the e-mail, confirming Mr. Montes' name and date of birth. Mr. Koseor replied as follows: "I will have my team conduct some more queries and I will contact you first thing tomorrow with the results." *Id.*

34. On March 21, 2017, Mr. Koseor contacted counsel for Mr. Montes, via telephone, to inform her that the only information CBP had available was that Mr. Montes was deported on February 19, 2017, and that all records were in the custody of the Calexico Border Patrol station since they effectuated the removal. The Calexico Border Patrol station is different from the Calexico Port of Entry, both of which are part of CBP.

35. On March 21, 2017, Director Salazar e-mailed counsel for Mr. Montes, stating that "[t]he Calexico Port of Entry does not have a current case file on Mr. Bojorquez. Please request the information through FOIA."

36. On March 21, 2017, Mr. Montes' counsel sent a letter to the Calexico Border Patrol station, via fax, asking for information related to Mr. Montes' removal. Counsel never received a response to her letter.

37. More than 20 business days have passed since Mr. Montes filed his FOIA request with Defendant CBP. Mr. Montes has not received any response to his FOIA request from Defendant CBP other than the initial receipt acknowledging the request.

38. On March 15, 2017, Mr. Montes' counsel also filed a FOIA request via email with Defendant USCIS, "[t]o obtain the complete A-file for Mr. Juan Manuel Montes Bojorquez." Defendant USCIS issued a confirmation receipt electronically.

39. On March 28, 2017, counsel for Mr. Montes received a letter from Defendant USCIS confirming the receipt of the request and assigning a control number for the request, NRC2017047990.

40. More than 20 business days have passed since Mr. Montes filed his FOIA request with Defendant USCIS. Mr. Montes has not received any response from Defendant USCIS since the letter confirming receipt of the request on March 28, 2017.

## CAUSE OF ACTION

(Violation of FOIA, 5 U.S.C. § 552)

41. Mr. Montes incorporates the allegations in the paragraphs above as though fully set forth here.

42. Defendants have unlawfully withheld records requested by Plaintiff pursuant to 5 U.S.C. § 552.

43. The FOIA statute requires that a response to a request be issued within 20 days, excepting Saturdays, Sundays, and legal public holidays. 5 U.S.C. § 552(a)(6)(A)(i). Mr. Montes' requests to Defendants CBP and USCIS have been pending for more than 20 business days without a response.

44. Defendants have violated FOIA by failing to produce any and all non-exempt records responsive to Mr. Montes' FOIA requests within the 20-day time period set forth in 5 U.S.C. § 552(a)(6)(A)(i).

//
//
//

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. Montes prays that this Court grant the following relief:

(1) Order Defendants to conduct a search of any and all responsive records to Mr. Montes' FOIA requests and demonstrate that they employed search methods reasonably likely to lead to the discovery of records responsive to Plaintiff's FOIA requests;

(2) Order Defendants to produce, by a date certain, any and all non-exempt records responsive to Mr. Montes' FOIA requests and a *Vaughn* index of any responsive records withheld under claim of exemption;

(3) Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to Mr. Montes' FOIA requests;

(4) Award costs and reasonable attorney fees incurred under this action under 5 U.S.C. § 552(a)(4)(E); and

(5) Grant any further relief that this Court may deem fit and proper.

Respectfully submitted,

DATED: April 18, 2017

COVINGTON & BURLING LLP

By: */s/ Mónica Ramírez Almadani*
Mónica Ramírez Almadani
Devon L. Mobley-Ritter

NATIONAL IMMIGRATION LAW CENTER
Nora A. Preciado
Karen C. Tumlin

LAW OFFICES OF STACY TOLCHIN
Stacy Tolchin

LAW OFFICES OF BELINDA HELZER
Belinda Escobosa Helzer

*Attorneys for Plaintiff*