MÓNICA RAMÍREZ ALMADANI (SBN 234893)
MARK Y. CHEN (SBN 310450)
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067
Tel: (424) 332-4800/Fax: (424) 332-4749
mralmadani@cov.com; mychen@cov.com

NORA A. PRECIADO (SBN 239235)
KAREN C. TUMLIN (SBN 234691)
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Boulevard, Suite 1600
Los Angeles, CA 90010
Tel: (213) 639-3900/Fax: (213) 639-3911
preciado@nilc.org; tumlin@nilc.org
*(Additional Co-Counsel for Plaintiff on Subsequent Page)*

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Juan Manuel MONTES BOJORQUEZ,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES CUSTOMS AND BORDER PROTECTION; Elaine DUKE[1], Acting Secretary, Department of Homeland Security; Kevin K. MCALEENAN, Acting Commissioner, United States Customs and Border Protection; and Patricia MCGURK, Patrol Agent-in-Charge, Calexico Border Patrol Station.<br><br>　　　Defendants. | Civil Case No. 17-CV-00780-GPC-NLS<br><br>**SECOND AMENDED COMPLAINT UNDER THE FREEDOM OF INFORMATION ACT; COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; AND PETITION FOR WRIT OF HABEAS CORPUS AND MANDAMUS** |

---

[1] Defendant Elaine Duke has been substituted for her predecessor.  Fed. R. Civ. P. 25(d).

*Additional Co-Counsel for Plaintiff*

STACY TOLCHIN (SBN 217431)
LAW OFFICES OF STACY TOLCHIN
634 S. Spring St., Suite 500A
Los Angeles, CA 90014
Tel: (213) 622-7450
Fax: (213) 622-7233
Stacy@tolchinimmigration.com

BELINDA ESCOBOSA HELZER (SBN 214178)
LAW OFFICES OF BELINDA ESCOBOSA HELZER
712 N. Harbor Blvd.
Fullerton, CA 92831
Tel: (714) 879-5770
Fax: (714) 879-5771
bescobosahelzer@gmail.com

DEVON L. MOBLEY-RITTER (SBN 309439)
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Tel: (650) 632-4739
Fax: (650) 632-4839
dmobleyritter@cov.com

# INTRODUCTION

1.     Plaintiff Juan Manuel Montes Bojorquez ("Mr. Montes") brings this action to secure his return to the United States after U.S. Customs and Border Protection ("CBP") agents unlawfully expelled him from the United States in the middle of the night on February 18-19, 2017, in or near Calexico, California.

2.     Mr. Montes also brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief seeking the full disclosure and release of agency records improperly withheld by Defendant CBP, an agency of the federal government.

3.     Mr. Montes is a 23-year-old young man who has twice been granted deferred action and employment authorization pursuant to the Deferred Action for Childhood Arrivals ("DACA") program, which the U.S. Department of Homeland Security ("DHS") established in 2012.  Under the DACA program, individuals like Mr. Montes are federally authorized to be present and work in the United States for a two-year period, subject to renewal for a period of two years.

4.     CBP agents arrested, detained, and forced Mr. Montes to depart from the United States in the middle of the night on February 18-19, 2017.  Mr. Montes was approached by a CBP agent while walking down the street in Calexico, California on his way to take a taxi home after seeing a friend.  On information and belief, Mr. Montes, who is Latino, was stopped for no apparent legal reason.  At that time, Mr. Montes had DACA status and employment authorization, which did not expire until 2018.

5.     To this date, Mr. Montes, who suffers from a cognitive disability believed to be caused by a traumatic brain injury he suffered as a child, is living in limbo in Mexico. CBP agents removed Mr. Montes from the country without any procedural safeguards of a formal hearing and without providing him with any documentation or record that supports his summary removal.  Through counsel, Mr. Montes has repeatedly attempted to obtain   documentation from Defendant CBP, but CBP has failed to produce documentation regarding this February 18-19, 2017 event.

6.     The Immigration and Nationality Act ("INA") and accompanying regulations set forth explicit procedures that require either that Mr. Montes be provided a hearing before an immigration judge or that he voluntarily waive a right to a hearing before an immigration judge and accept voluntary departure.  8 U.S.C. §§ 1229a, 1229c. Mr. Montes was never provided a hearing before an immigration judge and did not knowingly or voluntarily accept voluntary departure.  In fact, Mr. Montes was federally authorized to be present and work in the United States because he had valid DACA status at the time of his removal.  There was no basis to deport him, much less in the manner in which it occurred.

7.     Moreover, any agreement to accept voluntary departure must be knowing, intelligent, and voluntary.  *See, e.g., Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 561 (9th Cir. 1990); Settlement Agreement, *Lopez-Venegas v. Johnson*, No. 13-cv-03972-JAK (PLA) (C.D. Cal., approved February 25, 2015).  For voluntary departure to apply, CBP must follow specific procedures, including the completion of Form I-826, which advises individuals of their right to see an immigration judge.  CBP has provided no records indicating that Mr. Montes received this form or accepted voluntary departure.

8.     Further, Mr. Montes was entitled to due process protections as a noncitizen with substantial ties and equities in this country.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

9.     Mr. Montes was also unlawfully expelled in violation of the United States' arrangement with Mexico for safe repatriation that prohibits repatriation of Mexican nationals after 10:00 p.m. and before 6:00 a.m.  *See* https://www.dhs.gov/news/2016/02/23/united-states-and-mexico-sign-updated-repatriation-arrangements (last visited May 20, 2017).  Such arrangements are designed, in part, to protect Mexican citizens from being returned to Mexico at unsafe times.

10.     Scared and confused, Mr. Montes attempted to reenter the United States after he was expelled on February 19, 2017.  CBP agents took custody of Mr. Montes after he turned himself in.  CBP officials also fingerprinted Mr. Montes and, as a result, identified his "Alien number" and, upon information and belief, should have identified that he had DACA status.  But nothing in CBP's records that have been produced to date from the evening of February 19, 2017, or the morning of February 20, 2017 when Mr. Montes was again deported, even reference DACA status.  Based on CBP's documents produced after the commencement of this suit, it appears that Mr. Montes was issued an expedited removal order on February 20, 2017.  However, a copy of this removal order was not provided until May 10, 2017, in response to this litigation.

11.     The documents that have been disclosed by Defendant CBP contain numerous redactions that withhold certain relevant information, including information regarding the databases and records that were checked when Mr. Montes reentered the United States on February 19, 2017, after his expulsion the night before.  Such information is significant, in part, to determine if CBP created or maintained any records pertaining to Mr. Montes's original expulsion and whether CBP was on notice of Mr. Montes's DACA status.  Further, the signatures on the expedited removal order, which are relevant to determining whether proper procedure was followed in issuing the February 20, 2017 expedited removal order, are redacted without legal cause.

12.     Mr. Montes must be returned to the United States and his DACA status must be restored forthwith as there was no legal basis for his expulsion from the United States on February 18-19, 2017, which also invalidates the February 20, 2017 expedited removal order.  *See Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1166 (9th Cir. 2005), *as amended on reconsideration*, No. 02-74187, 2005 WL 553046 (9th Cir. Mar. 10, 2005); *Mendez v. INS*, 563 F.2d 956, 958 (9th Cir. 1977).

## JURISDICTION AND VENUE

13.     This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2241 (habeas), 8 U.S.C. § 1252(e) (judicial review of expedited removal

orders); 28 U.S.C. §1361 (mandamus), 5 U.S.C. § 552(a)(4)(B) (FOIA), 5 U.S.C. § 704 (Administrative Procedures Act), and 28 U.S.C. § 2201-2 (declaratory judgment when jurisdiction already exists).

14.   Venue properly lies within the Southern District of California under 28 U.S.C. § 1391, because this is a civil action in which Defendants are an agency, or officers of an agency, of the United States, and because a substantial part of the events or omissions giving rise to this action occurred in the District.

## **PARTIES**

15.   Plaintiff Juan Manuel Montes Bojorquez ("Mr. Montes") was unlawfully expelled from the United States on February 18-19, 2017 by the federal government.  Mr. Montes had valid DACA status when he was removed.  He was not provided the opportunity to see an immigration judge, seek the assistance of counsel, or otherwise present his DACA paperwork or work authorization before he was removed from the United States.  Mr. Montes is currently in Mexico.

16.   Defendant United States Customs and Border Protection ("CBP") is an agency of the Department of Homeland Security, within the Executive Branch of the government of the United States, and an agency within the meaning of 5 U.S.C. § 552(f)(1).  CBP is the agency that issues orders of "expedited removal" at the ports of entry, as well as documents that allow noncitizens to withdraw their applications for admission to the United States and voluntarily return to their home country.  8 U.S.C. §§ 1225(b), 1225(a)(4); 8 C.F.R. § 235.4.  CBP has in its possession, custody, and control records to which Mr. Montes seeks access.

17.   Defendant Elaine Duke is the Acting Secretary of the Department of Homeland Security ("DHS").  The Secretary of Homeland Security is charged with the administration and enforcement of the federal immigration laws.  8 U.S.C. § 1103(a).  Accordingly, Defendant Duke has supervisory responsibility and is sued in her official capacity.

18.    Defendant Kevin K. McAleenan is the Acting Commissioner of CBP, which is an agency within DHS.  Commissioner McAleenan is the agency's chief operating officer and responsible for overseeing CBP employees.  CBP officers are responsible for Mr. Montes's unlawful removal from the United States on February 18-19, 2017. Accordingly, Defendant McAleenan has supervisory responsibility and is sued in his official capacity.

19.    Defendant Patricia McGurk is the Patrol Agent-in-Charge of the Calexico Border Patrol Station.  The Border Patrol is a division of CBP.  Border Patrol officers from the Calexico Border Patrol Station are responsible for Mr. Montes's physical removal from the United States on February 18-19, 2017.  As Patrol-Agent-in-Charge, Defendant McGurk is responsible for overseeing the Calexico Border Patrol Station. Accordingly, Defendant McGurk has supervisory responsibility and is sued in her official capacity.

## FACTUAL BACKGROUND

20.    Plaintiff Juan Manuel Montes Bojorquez ("Mr. Montes") came to the United States when he was only nine years old.  He is now 23 years old.  Mr. Montes suffered a traumatic brain injury when he was a young child.  He was enrolled in special education classes throughout his education in the United States—from elementary school through high school.  Mr. Montes overcame these challenges and graduated from high school in 2013.  The next year, he enrolled in community college and began pursuing a welding degree.  Although Mr.  Montes speaks and reads English, Spanish is his preferred language.

21.    Prior to his removal from the United States, Mr. Montes had been employed as a farmworker for approximately two years.  He worked in various parts of California and Arizona, rising early each morning to pick crops in the fields.  Throughout this period, Mr. Montes planned to return to school to complete his degree.

//

//

**Mr. Montes's DACA Status**

22.    In 2013, Mr. Montes applied for the Deferred Action for Childhood Arrivals ("DACA") program, which DHS established in 2012.  Memorandum of Janet Napolitano, Sec'y of Homeland Security, to Alejandro Mayorkas, Director, U.S. Citizenship and Immigration Services ("USCIS"), *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children*, June 15, 2012 ("2012 DACA Memorandum").  Under the DACA program, individuals who (1) were under the age of 31 as of June 15, 2012, (2) came to the United States before their 16th birthday, (3) have continuously resided in the United States since June 15, 2007, up until the present time, (4) were physically present in the United States on June 15, 2012, (5) had no lawful status on June 15, 2012, (6) are currently in school, have graduated or obtained a certificate of completion from high school, and (7) have not been convicted of a felony, significant misdemeanor, or three or more other misdemeanors, and do not otherwise pose a threat to national security or public safety were eligible for deferred action.  *Id.*

23.    Those who met the DACA requirements were allowed to "request [DACA] for a period of two years, subject to renewal for a period of two years, and may be eligible for employment."  *Frequently Asked Questions*, USCIS, https://www.uscis.gov/ humanitarian/consideration-deferred-action-childhood-arrivals-process/frequently-asked-questions (last visited May 21, 2017).  As USCIS's website affirm[ed], "DACA [was] intended, in part, to allow CBP and ICE to focus on priority cases.  Under the direction of the Secretary of Homeland Security, if an individual met the guidelines for DACA, CBP or ICE would exercise their discretion on a case-by-case basis to prevent qualifying individuals from being apprehended, placed into removal proceedings, or removed."  *Id.*

24.    DACA status terminated if a DACA recipient departed the United States without advance parole permission prior to departure.  *Id.*

25.    USCIS granted Mr. Montes deferred action under DACA in 2014, and he successfully renewed his DACA status in 2016 for another two years, expiring in 2018.

26.    Mr. Montes also obtained an Employment Authorization Document ("EAD") issued under the DACA program.  The EAD issued to Mr. Montes is the type of EAD that is granted only to DACA recipients.  The "C33" category on Mr. Montes's EAD corresponds to DACA.

27.    Mr. Montes was fully aware that, even with DACA status, he could not depart the United States unless he had permission from the government.  He declined offers to visit Mexico with friends because he knew that he could not travel outside of the country.

**Mr. Montes Was Physically Expelled from the United States in the Late Hours of February 18, 2017, and/or Early Morning Hours of February 19, 2017**

28.    On or about February 18, 2017, Mr. Montes was walking to a taxi stand in Calexico, California after leaving a friend's house when a law enforcement official— seemingly a U.S. Border Patrol officer—on a bicycle approached him and began to question him.  It was sometime between 10:00 p.m. and 11:00 p.m. when he was stopped. On information and belief, Mr. Montes, who is Latino, was stopped for no apparent legal reason.  The officer asked Mr. Montes in an aggressive manner for identification, but Mr. Montes had accidentally left his usual wallet, which contained his California identification card and EAD, in a friend's car.  The officer then called another agent or officer to the scene.  Mr. Montes was scared and confused that he had been stopped and felt threatened by the officer.

29.    A second officer arrived at the scene and placed Mr. Montes in a government vehicle.  That officer then drove Mr. Montes to a station or facility at the port of entry in or near Calexico.  There, he was detained and questioned.

30.    Mr. Montes believes he told at least one agent at some point during the initial encounter or subsequent questioning that he had work authorization.

31.    Mr. Montes was not provided with the opportunity to see an immigration judge or seek the assistance of counsel.  Mr. Montes believes he signed certain documents, but he does not recall what they were and he did not sign them voluntarily.

32.    Mr. Montes does not recall if he was provided with a Form I-826 Notice of Rights and Request for Disposition, which informs a noncitizen of the privilege of voluntary departure in lieu of a hearing before an immigration judge.  Even if he was provided with the actual Form I-826, Defendants did not translate or explain any of Mr. Montes's rights contained within the form.

33.    At approximately 1:00 a.m. or later on February 19, 2017, CBP officers drove and then walked Mr. Montes to the U.S.-Mexico border (near Mexicali, Baja California) and physically removed, or "repatriated," him from the United States despite his DACA status.  He was not given copies of any documents at all, let alone any documents indicating the legal basis for his physical removal.

34.    Any agreement to accept voluntary departure or voluntary return must be knowing, intelligent and voluntary.  *See, e.g., Orantes-Hernandez v. Thornburgh*, 919 F.2d  549, 561 (9th Cir. 1990); Settlement Agreement, *Lopez-Venegas v. Johnson*, No. 13-cv-03972-JAK (PLA) (C.D. Cal., approved February 25, 2015).

35.    Under a 2016 arrangement with the Mexican government, CBP in Calexico is not permitted to repatriate adults to Mexicali after 10:00 p.m.  *See* https://www.dhs.gov/news/2016/02/23/united-states-and-mexico-sign-updated-repatriation-arrangements (last visited May 20, 2017).  DHS stated publicly in 2016 that the repatriation arrangements, which apply to other ports of entry besides Calexico, represent the United States' "continued joint commitment to international cooperation, and to the safety of those vulnerable individuals who are repatriated to Mexico. . . ." *Id.*

36.    Mr. Montes could not have been legally deported, or have obtained voluntary departure, without going through the formal procedures required by the INA. *See* 8 U.S.C. § 1229c (voluntary departure procedures); 8 U.S.C. §1229a (removal proceedings before an immigration judge).  But according to CBP records, Mr. Montes was not subjected to either procedure, and yet he was physically removed.

37.    After his expulsion to Mexicali, Mr. Montes contacted one of his best friends.  Mr. Montes told his friend that he had been deported and did not know what to

do.  Mr. Montes's friend, who resides in California and in whose car Mr. Montes had left the wallet with the EAD, drove with his wife across the border to Mexicali to see Mr. Montes.  Mr. Montes's friend and his wife spent most of February 19, 2017 with Mr. Montes in Mexicali.  Because Mr. Montes had nowhere to stay, his friend's wife took him to her aunt's house so that he could eat and sleep.

38.    On the same day in the early evening, Mr. Montes left his friend's aunt's house to pick up some clothes that a family friend had delivered and planned to go stay with the family of his step-father who also lived in Mexicali.  On his way to the relative's house, Mr. Montes was approached by two men.  One man wrapped his arm around Mr. Montes's neck and held a blade to his back, while the other man grabbed Mr. Montes's suitcase, which contained his clothes.  Mr. Montes tried to run away, but he fell.  The two men caught up to Mr. Montes and began kicking his back and legs while he was on the ground.

39.    After this attack, Mr. Montes was shaken and feared for his life.  He did not know what to do, but he knew he needed to be safe.

**Mr. Montes Was Physically Removed Again in the Afternoon on February 20, 2017**

40.    Scared and missing the safety of his home, on February 19, 2017, Mr. Montes attempted to return to the United States.  He hid for about half an hour after crossing into the United States, but turned himself in when he saw U.S. Border Patrol agents and feared for his safety.

41.    After patting Mr. Montes down and confiscating his phone and wallet, the agents took Mr. Montes to a nearby facility, where he was detained for many hours. During this time, Mr. Montes was questioned in Spanish about his identity.

42.    CBP officers asked Mr. Montes to sign several documents without explaining the documents' contents and without providing him the opportunity to review the documents.  Mr. Montes was not provided a copy of any of the documents that he signed.

43.   CBP officers fingerprinted Mr. Montes and, upon information and belief, should have had access to information about Mr. Montes's DACA status because they identified his "Alien number."  Moreover, if CBP had followed proper procedure when they unlawfully expelled Mr. Montes in the late hours of February 18, 2017, and/or early morning hours of February 19, 2017, CBP officials would have known that they had just expelled him from the country and that prior to that expulsion he had active DACA status.

44.   On or about February 20, 2017, at approximately 3:20 p.m., Mr. Montes was again physically removed to Mexico based on an order of expedited removal, 8 U.S.C. § 1225(b), and without being provided with any documentation or records of his removal. Mr. Montes is currently staying with family in Mexico.

45.   Extreme circumstances existed which prevented Mr. Montes from directly challenging this February 20, 2017 expedited removal order while he was in custody in the United States.  *See Singh v. Waters*, 87 F.3d 346, 349 (9th Cir. 1996).  As discussed in paragraphs 10 and 63, he was unaware of the nature of his February 20, 2017 removal until after CBP's May 10, 2017 FOIA response, which provided evidence of an expedited removal order for the first time.  Prior to that date, Mr. Montes could not have filed a petition for writ of habeas corpus challenging his removal, because he did not know the legal basis for his expatriation.

**Termination of DACA**

46.   On June 6, 2017, counsel for Mr. Montes received a U.S. Citizenship and Immigration Services ("USCIS") Notice of Action from opposing counsel, dated April 21, 2017.  That notice officially terminated Mr. Montes's DACA status and his employment authorization based on DHS records that "show [he] entered the United States without inspection on or about February 19, 2017," allegedly admitting to entering the country illegally, and did not request authorization to travel outside of the United States "prior to [his] departure from the United States."  Nowhere in this Notice does the government recognize that Mr. Montes did not "depart" the country of his own volition.

47.    On September 5, 2017, DHS announced that it was terminating the DACA program.   Memorandum on Rescission Of Deferred Action For Childhood Arrivals (DACA), *available at* https://www.dhs.gov/news/2017/09/05/memorandum-rescission-daca.  As part of the termination of DACA, DHS will provide a limited window in which it will adjudicate certain applications for DACA.   Specifically, DHS will adjudicate pending DACA requests and associated work authorization applications that already had been accepted by the agency as of September 5, 2017, but will reject new applications filed after September 5, 2017.  It will further adjudicate pending renewal requests and work authorization applications from current DACA recipients, as well as DACA renewal requests and applications for employment authorization from current DACA recipients for grants of deferred action that expire between September 5, 2017, and March 5, 2018, and that are accepted by the agency as of October 5, 2017.

48.    But for Mr. Montes being unlawfully expelled from the United States by Defendants, he would have been eligible to submit a DACA renewal request and application for employment authorization by October 5, 2017, because his DACA status was set to expire on January 25, 2018.  If his renewal request is approved, Mr. Montes's grant of deferred action would be extended for another two years, until 2020.

**Mr. Montes's FOIA Request to USCIS**

49.    On March 15, 2017, Mr. Montes filed a FOIA request via email with USCIS "[t]o obtain the complete A-file for Mr. Juan Manuel Montes Bojorquez."  USCIS issued a confirmation receipt electronically.

50.    On March 28, 2017, Mr. Montes's counsel received a letter from USCIS confirming the receipt of the request and assigning a control number for the request, NRC2017047990.   In that letter, USCIS requested an additional 10 business days to respond due to unusual circumstances.  *See* 5 U.S.C. § 552(a)(6)(B).

51.    On May 8, 2017, USCIS produced the requested documents via government counsel pursuant to this litigation.

13

SECOND AMENDED COMPLAINT UNDER THE FREEDOM OF INFORMATION ACT; COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; AND PETITION FOR WRIT OF HABEAS CORPUS AND MANDAMUS

52.   Mr. Montes's A-file, however, does not contain any records pertaining to Mr. Montes's removal on February 18-19, 2017.  Nor does it contain any records bearing Mr. Montes's signature on February 19-20, 2017.

**Mr. Montes's FOIA Request to CBP**

53.   On March 15, 2017, Mr. Montes also filed a FOIA request with Defendant CBP electronically, requesting "all records regarding any interactions, arrests, detentions or apprehensions by CBP, including any interactions on or about February 17, 2017 to February 21, 2017."   Defendant CBP issued a confirmation receipt electronically, assigning the receipt number CBP-2017-039894.

54.   Mr. Montes filed this request in order to obtain any records ordering his initial expulsion and subsequent removal to Mexico.

55.   Mr. Montes's counsel also attempted to obtain records directly from the Calexico Port of Entry on March 15, 2017, March 17, 2017, and March 20, 2017.

56.   On March 20, 2017, Mr. Ryan Koseor, the Acting Assistant Port Director, responded to counsel's e-mail, stating, "I am having trouble finding Mr. Montes's case," and asking for verification of Mr. Montes's name and date of birth.   Mr. Montes's counsel replied to the e-mail, confirming Mr. Montes's name and date of birth.   Mr. Koseor replied as follows: "I will have my team conduct some more queries and I will contact you first thing tomorrow with the results."  *Id.*

57.   On March 21, 2017, Mr. Koseor contacted counsel for Mr. Montes, via telephone, to inform her that the only information CBP had available was that Mr. Montes was deported on February 19, 2017, and that all records were in the custody of the Calexico Border Patrol station since they effectuated the removal.

58.   On March 21, 2017, Mr. Montes's counsel sent a letter to the Calexico Border Patrol station, via fax, asking for information related to Mr. Montes's removal. Counsel never received a response to her letter.

59.   When Mr. Montes commenced this lawsuit on April 18, 2017, more than 20 business days had passed since he had filed his FOIA request with Defendant CBP.

60.    On April 19, 2017, the day after Mr. Montes filed the original complaint in this case, DHS told the press, not counsel, in a public statement that Mr. Montes's DACA status had expired in 2015 and had not been renewed.  *See* https://www.usatoday.com/story/news/world/2017/04/18/first-protected-dreamer-deported-under-trump/100583274/ (last visited Apr. 21, 2017).

61.    The following day, DHS reversed its position, publicly stating that Mr. Montes had in fact renewed his DACA status, but that he had departed the United States at an unknown date or time without "advance parole," which terminated his DACA status.  *See* https://www.dhs.gov/news/2017/04/19/dhs-statement-former-daca-recipient-juan-manuel-montes-bojorquez# (last visited May 20, 2017).

62.    In that statement, DHS stated that Mr. Montes was arrested by Border Patrol on February 19, 2017, and that "[a]ll of the arrest documents from February 19, 2017, bear Montes-Bojorquez's signature."  *Id.*

63.    On April 20, 2017, CBP provided a response to Mr. Montes's FOIA request. The response stated: "Your CBP FOIA request is complete."  However, the response contained a single responsive document, a Form I-213, detailing Mr. Montes's encounter with CBP on February 19, 2017.

64.    Despite DHS's public statement on April 20, 2017, the FOIA response produced that day did not contain any documents with Mr. Montes's signature.

65.    The Form I-213 states that Mr. Montes was processed for "expedited removal."  By regulation, a record for an expedited removal order must contain both a "Notice and Order of Expedited Removal" (Form I-860) and a "Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act" (Form I-867AB).  8 C.F.R. § 253.3(b)(2).  Neither document was contained in the April 20, 2017 FOIA response.

66.    On May 10, 2017, CBP issued an additional FOIA response, despite the April 20, 2017 notice by CBP that the April 20, 2017 document production was complete.  That production included a February 20, 2017 Form I-860 and a Form I-867AB, documents which had never been served on Mr. Montes.

67.    The documents that have been disclosed to date by Defendant CBP contain numerous redactions that withhold certain relevant information, including information regarding the databases and records that were checked when Mr. Montes reentered the United States on February 19, 2017, after his expulsion the night before.   Such information is significant, in part, to determine if CBP created or maintained any records pertaining to Mr. Montes's original expulsion.   Further, the signatures on the expedited removal order, which are relevant to determining whether proper procedure was followed in issuing the February 20, 2017 expedited removal order, are redacted without legal cause.  8 U.S.C. § 1225(b); 8 C.F.R. § 235.3(b)(2)(i) (requiring separate signatures from examining and supervisory officers).

## CAUSES OF ACTION

## COUNT ONE

### (Violation of FOIA, 5 U.S.C. § 552)

### (Defendant CBP only, Inadequate Search)

68.    Mr. Montes incorporates the allegations in the paragraphs above as though fully set forth here.

69.    Defendant CBP has not conducted an adequate search of records as requested by Mr. Montes pursuant to 5 U.S.C. § 552.  A FOIA requester, dissatisfied with the agency's response that no records have been found, may challenge the adequacy of the agency's search.  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 67 (D.C. Cir. 1990).

70.    Defendant CBP's April 20, 2017 response to Mr. Montes's FOIA request was inadequate because it contains no records of Mr. Montes's February 18-19, 2017 physical removal from the United States.

71.    Upon information and belief, other records may be missing from Defendant CBP's response.

72.    Defendant CBP has violated the FOIA statute by failing to produce any and all non-exempt records responsive to Mr. Montes's FOIA request.

73.     Exhaustion of administrative remedies is not required where Defendant CBP responded to the FOIA request after the instant action was filed.

## COUNT TWO

### (Violation of FOIA, 5 U.S.C. § 552)

### *(Defendant CBP only, Records Unlawfully Withheld)*

74.     Mr. Montes incorporates the allegations in the paragraphs above as though fully set forth here.

75.     Defendant CBP has wrongfully withheld specific responsive records, or portions thereof, violating 5 U.S.C. § 552(a)(3)(A) and corresponding regulations.  The FOIA's statutory exemptions do not provide a legitimate basis for the withholding of portions of these responsive records.

76.     Exhaustion of administrative remedies is not required where Defendant CBP responded to the FOIA request after the instant action was filed.

## COUNT THREE

### (Violation of Due Process and Immigration and Nationality Act ("INA"))

### *(Failure to Provide a Hearing Before an Immigration Judge)*

77.     Mr. Montes incorporates the allegations in the paragraphs above as though fully set forth here.

78.     The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  Individuals who are unlawfully present in the United States are subject to the protections of due process.  *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent").

79.     Congress provided a process in the INA for a full hearing before an immigration judge that comports with due process.  8 U.S.C. § 1229a.

80.     Mr. Montes resided in the United States for approximately 14 years and was not subject to removal from the United States because he had valid DACA status.

81.   On February 18-19, 2017, Mr. Montes was physically removed from the United States by CBP agents without any formal due process.

82.   Upon information and belief, CBP officers had, or should have had, the electronic means of verifying Mr. Montes's identity and his DACA status, failed to make such identifications, and/or otherwise ignored that Mr. Montes was authorized to remain in the United States.

83.   The Due Process Clause of the Fifth Amendment to the U.S. Constitution and the INA required a full and fair hearing before Mr. Montes, who had valid DACA status, could be physically removed from the United States.

## COUNT FOUR

**(Violation of Due Process, INA, Regulations, and**

**Administrative Procedure Act ("APA"))**

*(Coerced Voluntary Departure)*

84.   Mr. Montes incorporates the allegations in the paragraphs above as though fully set forth here.

85.   The INA provides DHS with the authority to issue voluntary departure in lieu of a removal order.  *See* 8 U.S.C. § 1229c.

86.   The implementing regulations permit U.S. Border Patrol agents to issue voluntary departure.  *See* 8 C.F.R. § 240.25(a).

87.   The voluntary departure procedures required that Mr. Montes be provided a Form I-826 "Notice of Rights and Request for Disposition," informing him of his right to a hearing before an immigration judge and his right to seek the advice of counsel.

88.   The expulsion of Mr. Montes from the United States in a manner that is not knowing and voluntary violates the INA, 8 U.S.C. § 1101, *et seq.*, including 8 U.S.C. § 1229c(a)(1), which requires that any voluntary departure be knowing and voluntary.

89.   The regulations preclude the use of threats, coercion, or physical abuse by an immigration officer to induce an individual to waive his rights.  *See* 8 C.F.R. § 287.8(c)(2)(vii).

90.    An agency's action that violates a regulation is arbitrary and capricious and must be set aside.  5 U.S.C. § 706(2)(A).

91.    The expulsion of Mr. Montes from the United States in a manner that was not knowing and voluntary also violated the Due Process Clause of the Fifth Amendment to the U.S. Constitution, which requires that an individual's waiver of rights in connection with his or her expulsion from the United States be knowing and voluntary.

## COUNT FIVE

### (Violation of Due Process, Regulations and APA)

### *(Failure to Serve Any Expedited Removal Order)*

92.    Mr. Montes incorporates the allegations in the paragraphs above as though fully set forth here.

93.    The May 10, 2017 FOIA response by CBP produced documents from a February 20, 2017 expedited removal order.  This was the first time Mr. Montes, or counsel, received evidence of an expedited removal order.

94.    The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."

95.    Due process requires service and a copy of any order of removal.  *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974); *Padilla-Agustin v. I.N.S.*, 21 F.3d 970, 974 (9th Cir. 1994).

96.    Further, the regulations protect this fundamental due process interest in service of final orders by requiring that a noncitizen who is issued an order of expedited removal be served with a copy of that order.  *See* 8 C.F.R. § 235.3(b)(2); 8 C.F.R. § 103.8.

97.    An agency's action that violates a regulation is arbitrary and capricious and must be set aside.  5 U.S.C. § 706(2)(A).

98.   The failure to provide a copy of any expedited removal order therefore violated Mr. Montes's due process, regulatory rights, and the Administrative Procedure Act.

## COUNT SIX

### (Equitable Estoppel)

### *(CBP Engaged in Affirmative Misconduct in Physically Removing Mr. Montes)*

99.   Mr. Montes incorporates the allegations in the paragraphs above as though fully set forth here.

100.  Defendants engaged in affirmative misconduct in expelling Mr. Montes from the United States on February 18-19, 2017, in violation of the INA, regulations, and due process, and despite the fact that he had work authorization in the United States.

101.  Principles of equitable estoppel require that CBP be estopped from relying on the February 20, 2017 expedited removal order because Mr. Montes was only outside of the United States seeking admission due to CBP's affirmative misconduct.  *See Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1166 (9th Cir. 2005), *as amended on reconsideration*, No. 02-74187, 2005 WL 553046 (9th Cir. Mar. 10, 2005) ("[T]he government cannot rely on the post-expulsion events its own misconduct set in motion.")

102.  Estoppel against the government in this case would not unduly damage the public interest, since Mr. Montes was not subject to removal from the United States when he was expelled on February 18-19, 2017.

## COUNT SEVEN

### (Mandamus)

### *(Mr. Montes's Return to the United States is Required by Law)*

103.  Mr. Montes incorporates the allegations in the paragraphs above as though fully set forth here.

104. The mandamus statute permits a court to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff. *See* 28 U.S.C. § 1361.

105. Defendants have a duty to return Mr. Montes to the United States because he was unlawfully expelled from the United States on February 18-19, 2017, in violation of the INA, regulations, and due process.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Mr. Montes prays that this Court grant the following relief:

(1)    Order Defendant CBP to conduct a search of any and all responsive records to Mr. Montes's FOIA request and demonstrate that it employed search methods reasonably likely to lead to the discovery of records responsive to Mr. Montes's FOIA request, including the production of "FOIA Search Staffing Sheets" for all searchers;

(2)    Order Defendant CBP to produce, by a date certain, any and all non-exempt records responsive to Mr. Montes's FOIA request and a *Vaughn* index of any responsive records withheld under claim of exemption;

(3)    Enjoin Defendant CBP from continuing to withhold any and all non-exempt records responsive to Mr. Montes's FOIA request;

(4)    Order that Defendants return Mr. Montes to the United States and restore his DACA status forthwith;

(5)    Order that Defendants allow Mr. Montes to submit an application to renew his DACA status after the October 5, 2017 deadline, and treat the application as if timely filed as a matter of law, since Mr. Montes's DACA status was terminated due to Defendants' unlawful conduct;

(6)    Estop Defendants from relying on the February 20, 2017 expedited removal order due to CBP's affirmative misconduct in physically removing Mr. Montes on February 18-19, 2017;

(7)     Alternatively, vacate the February 20, 2017 order of expedited removal because Mr. Montes's February 18-19, 2017 physical expulsion was unlawful;

(8)     Award costs and reasonable attorney fees incurred under this action under 5 U.S.C. § 552(a)(4)(E) ("FOIA") and 28 U.S.C. § 2412, *et seq.* (Equal Access to Justice Act); and

(9)     Grant any further relief that this Court may deem fit and proper.

Respectfully submitted,

DATED: September 11, 2017     By:     */s/ Mónica Ramírez Almadani*

COVINGTON & BURLING LLP
Mónica Ramírez Almadani
Mark Y. Chen
Devon L. Mobley-Ritter

NATIONAL IMMIGRATION
LAW CENTER
Nora A. Preciado
Karen C. Tumlin

LAW OFFICES OF STACY TOLCHIN
Stacy Tolchin

LAW OFFICES OF BELINDA
ESCOBOSA HELZER
Belinda Escobosa Helzer

*Attorneys for Plaintiff*

SECOND AMENDED COMPLAINT UNDER THE FREEDOM OF INFORMATION ACT; COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF; AND PETITION FOR WRIT OF HABEAS CORPUS AND MANDAMUS

# CERTIFICATE OF SERVICE

Counsel for Plaintiff certifies that the foregoing is true and accurate to the best of her information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon the participants in this case, all of whom are registered CM/ECF users.

DATED: September 11, 2017          By:     */s/ Mónica Ramírez Almadani*

COVINGTON & BURLING LLP
Mónica Ramírez Almadani

*Attorney for Plaintiff*

SECOND AMENDED COMPLAINT UNDER THE FREEDOM OF INFORMATION ACT; COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; AND PETITION FOR WRIT OF HABEAS CORPUS AND MANDAMUS